**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

| | |
|---|---|
| **AMMIE HACKER,** | |
| Plaintiff, | |
| **v.** | **CIVIL ACTION NO.: 5:20CV132 (GROH)** |
| **ANDREW SAUL, Commissioner of Social Security,** | |
| Defendant. | |

## <u>REPORT AND RECOMMENDATION</u>

### I.   <u>INTRODUCTION</u>

This case arises from the denial of Plaintiff Ammie Hacker's ("Plaintiff") Title XVI application for supplemental security income ("SSI"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), Brian Crockett, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Counsel was denied, making the ALJ's decision the final decision of Defendant Andrew Saul ("Commissioner"), the Commissioner of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for SSI contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion for Summary Judgment [ECF No. 12] be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 16] be **GRANTED**.

## II.   <u>PROCEDURAL HISTORY</u>

On or about March 2, 2019, Plaintiff filed her claim for SSI, with an alleged onset date of disability of February 1, 2016. R. 494, 525. Plaintiff's application for SSI was denied at both the initial and reconsideration levels of administrative review. R. 347-76. After these denials, Plaintiff requested a hearing before an ALJ., which was held on March 25, 2019. R. 320-346.   The ALJ Brian Crockett presided over the hearing in Morgantown, West Virginia. <u>Id.</u> Plaintiff, represented by Harold Carpenter, Esq., appeared and testified in person. <u>Id.</u> Casey Vass, a vocational expert, appeared by telephone and testified at the hearing. <u>Id.</u> On April 24, 2019, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act at any time since March 2, 2016, the date the application was filed. R. 180-95. On May 5, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1-7.

On July 2, 2020, Plaintiff, through counsel, Jan Dils, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. The Commissioner, through counsel Maximillian Nogay, Assistant United States Attorney, filed his Answer and the Administrative Record of the proceedings on November 12, 2020. Answer, ECF No. 6; Admin. R., ECF No. 7. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs. Pl.'s Mot. Summ. J., ECF No. 12; Def.'s Mot. Summ. J., ECF No. 16. Oral argument on the parties' motions was held before the undersigned on February 17, 2021.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, and having heard the parties' oral argument, the undersigned now issues the following Report and Recommendation.

## III.   <u>BACKGROUND</u>

### A.   Personal History

Plaintiff was born on March 17, 1977, and was thirty-eight years old at the time she made her application for SSI. R. 494. She is 5'6" and weighs approximately 250 pounds. R. 325. Plaintiff is married and has four children and a dog. R. 326.  Her husband is unemployed [R. 326] and her two younger children receive SSI because they have autism or are on the spectrum. R. 328. She lives in an apartment on the ground floor. <u>Id.</u> Plaintiff completed high school as a special needs student and has no relevant work history. R. 327, 526. Plaintiff alleges that she is disabled due to the following illnesses, injuries or conditions:  breast cancer, anxiety, attention deficit hyperactivity disorder, depression and a learning disability. R. 347-48.

### B.   Medical History

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. ECF No. 8, at 2. Accordingly, the undersigned relies upon those stipulated facts throughout this report and

recommendation. See Pl.'s Proposed Stipulation of Facts ECF No. 18; Def.'s Brief . ECF No. 15, at 3–9.

## IV.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a

listed impairment, we will assess and make a finding about your residual functional

capacity [("RFC")] based on all the relevant medical and other evidence in your case

record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant

to prove that he or she is disabled and that, as a result of the disability, he or she is unable

to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir.

1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at

step five to demonstrate that jobs exist in the national economy that the claimant is

capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant

is determined to be disabled or not disabled during any of the five steps, the process will

not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V.   ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ

concluded that Plaintiff had not engaged in any substantial gainful activity since the March

2, 2016, the application date. R. 185. At step two, the ALJ found that Plaintiff suffers from

the following severe impairments: breast cancer, post mastectomy (2016); generalized

anxiety disorder; major depressive disorder/bipolar disorder; borderline intellectual

functioning; and posttraumatic stress disorder. Id. At step three, the ALJ found that

Plaintiff does not have an impairment, or combination of impairments, that meets or

medically equals the severity of one of the listed impairments. R. 186. At step four, the

ALJ determined that Plaintiff has the RFC to perform sedentary work as defined in 20

C.F.R. § 416.967(a) except: can perform all postural occasionally, except:

> no climbing ladders, ropes or scaffolds; avoids concentrated
> exposure to extreme cold, extreme heat, and hazards; the
> work should be limited to simple routine work in occupations
> (with an specific vocational prep (SVP) of 2 or lower),
> performed in a low stress setting defined as requiring no fast
> paced production, no more than occasional changes in work
> routine or work setting, and no greater than occasional simple
> decision making; and the work should not require greater than
> occasional interaction with supervisors, co-workers, or the
> general public as a requirement of the job.

R. 188.[1] The ALJ then determined that Plaintiff had no past relevant work. R. 194. At step

five, the ALJ concluded that based on Plaintiff's age, education, work experience, and

RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff

can perform. R. 194. Thus, the ALJ found that Plaintiff is not disabled within the meaning

of the Social Security Act. R. 195.

## VI.   DISCUSSION

### A.   Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited

to determining whether the ALJ applied the proper legal standards and whether the ALJ's

factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453,

1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by

---

[1] For the purposes of his analysis, the ALJ determined that Plaintiff was thirty-eight years old at the time
the application was filed and therefore, a "younger individual" under the regulations. R.194.

means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

Plaintiff contends that the ALJ committed three errors in his decision. ECF No. 12-1, at 3. Specifically, Plaintiff submits that: (1) the ALJ erred in assessing Ms. Hacker's RFC assessment; (2) the ALJ failed to comply with 20 C.F.R. §416.927 in assigning "little weight" to the opinion of Ms. Hacker's treating psychiatrist, Diane Guinan, M.D.; and (3) the ALJ erred in Ms. Hacker's symptom evaluation. Id. On account of these errors, Plaintiff requests that the Court reverse the ALJ's decision and award other proper relief. Id. at 19.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed as a matter of law. ECF No. 15, at 23-24.

7

Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that: (1) substantial evidence supports the ALJ's RFC assessment; (2) the ALJ complied with 20 C.F.R. §416.927 in assigning "little weight" to the opinion of Ms. Hacker's treating psychiatrist, Diane Guinan, M.D. and (3) the ALJ used the correct procedures to evaluate Plaintiff's subjective complaints and there was substantial evidence to support those findings. Id. at 7-25. Accordingly, the Commissioner requests that the Court affirm the ALJ's decision that Plaintiff was not disabled from February 1, 2016 through November 12, 2020. Id. at 24-25.

**C.    Whether the ALJ's Decision Was Conducted in Conformity with the Law and Is Supported by Substantial Evidence**

**1.    The ALJ's process in creating the RFC conformed with the applicable law and was supported by substantial evidence.**

As Social Security Ruling ("SSR") 96-8p, 1996 SSR LEXIS 5 instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. SSR 96-8p, 1996 SSR LEXIS 5, at *2, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 2016 WL 3349355, at *9 (4th Cir. 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 SSR LEXIS 5, at *19, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that]

evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." Mascio, 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)) Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Mascio, 780 F.3d at 637; see Monroe v. Colvin, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because AL erred in not determining claimant's RFC using function-by-function analysis because ALJ also erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Here, Plaintiff argues that the ALJ failed to specify how long Plaintiff could sit, stand, and walk in an eight-hour day when formulating his RFC. Further, Plaintiff states the ALJ did not first determine the Plaintiff's functional limitations (how long she could sit, stand, or walk) but instead concluded that she could perform sedentary work  and not

less than sedentary work. Id. at 7. Lastly, the Plaintiff asserts that the ALJ did not properly evaluate Plaintiff's headaches with regard to her RFC. Id. at 7-8.

The undersigned will address the issues regarding the sit/stand/walk assessment first. The ALJ considered all of the evidence and explained his determination at length, considering Plaintiff's testimony, the medical record evidence, and the opinion evidence. R. 188-194. Although the ALJ did not make a specific finding as to Plaintiffs ability to sit/stand/walk in an 8 hour day, it was clear that he partially relied on the reviewing state agency physicians who opined that Plaintiff was capable of performing a limited range of light work.   R. 190, 354-356, 369-372. In those assessments, the state agency physicians found that Plaintiff could "stand and/or  walk (with normal breaks) for a total of: About 6 hours in an 8-hour workday"  and "Sit (with normal breaks) for a total of: About 6 hours in an 8-hour work day." R. 355, 370. Although the ALJ did not give a specific sit/stand assessment of the Plaintiff in his RFC, he referenced the evidence in the record and explained with clarity that although the state agency physicians determined that Plaintiff could perform light exertional work that he was reducing the exertional work to sedentary to accommodate Plaintiff's combination of residual effects and non-severe impairments such as obesity and fatigue. R. 190. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. See SSR 96- 9P, 1996 WL 374185, at *3. "Occasionally" means occurring from very little up to one-third of the time and would generally total no more than 2 hours in an 8-hour workday. Id. Accordingly, sedentary jobs typically involve sitting most of the workday, i.e., about 6 hours.  Id.  The vocational expert testified that the jobs identified as consistent with Plaintiff's RFC were performed seated, so even needing a cane would not affect

his testimony regarding the availability of work that Plaintiff could perform. R. 342. Further, the records that Plaintiff cites do not document any significant findings beyond what the ALJ discussed and considered in the decision; rather, she cites largely to her own subjective complaints.  But, a claimant's own description of her symptoms is never alone sufficient to establish disability.  See SSR 16-3p, 2016 WL 119029, *2 (Mar. 16, 2020); 20 C.F.R. §416.929(a). There is substantial evidence to support the ALJ's RFC.

Next the Plaintiff complains that the ALJ used the incorrect sequence in determining the Plaintiff's RFC as to the sit/stand/walk assessment. It is true that SSR 96-8p does require a function by function analysis before the RFC can be expressed in exertional levels of work. SSR 96-8P1996 WL 374184, July 2, 1996. Here, the ALJ did express the RFC by reducing from light exertion to sedentary exertion instead of stating specifically how many hours the Plaintiff could sit and stand in a work day.

However, SSR 96-8p further states that, "At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy'  work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it. SSR 96-8P1996 WL 374184, July 2, 1996. Here, there was no past relevant work so there was no error at step 4 of the evaluation process by not specifically listing her sit/stand/walk assessment. R. 194. At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do. SSR 96-8P1996 WL 374184July 2, 1996. The danger of the ALJ expressing the RFC in terms of

the lowest exertional level may concede lesser functional abilities than the individual actually possesses and would not reflect the *most* he or she can do based on the evidence in the case record, as directed by the regulations. Id.  If an error was made at step 5 by reducing to sedentary exertion, it was clearly harmless. Regardless, it is clear that substantial evidence supports the ALJ's RFC.

The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination.  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008); see also Keys v. Barnhart, 347 F.3d 990, 994-95 (7th Cir. 2003) ("The doctrine of harmless error . . . is fully applicable to judicial review of administrative decisions"); Hurtado v. Astrue, 2010 WL 3258272, at *11 (D.S.C. July 26, 2010) ("The court acknowledges there may be situations in which an error in an opinion is harmless because it would not change the outcome of the ALJ's decision"); cf. Ngarurih v. Ashcroft, 371 F.3d 182, 190 n. 8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.").

Lastly, the Court addresses the Plaintiff's argument that the ALJ did not properly evaluate Plaintiff's headaches as part of his RFC.  ECF No. 12-1, at 7. The undersigned finds that the ALJ explicitly considered Plaintiff's headaches in the RFC "in combination with [Plaintiff's] other impairments." In fact, the ALJ found the headaches to be non-severe because they were treated conservatively and did not require significant medical treatment. R. 186, 1371-76, 1385-91, 1522, 1527, 1657, 1849-50, 1865. The ALJ

specifically stated that, "Although independently non-severe, these impairments [asthma, headaches, obesity, and hypertension] have been considered in combination with the claimant's other impairments in reaching the residual functional capacity determination below." R. 186. The ALJ gave Plaintiff the benefit of the doubt by limiting her to a range of sedentary, unskilled work. The fact that Plaintiff views the evidence differently fails to provide a valid basis for disrupting the ALJ's decision.

Where, as here, the ALJ's RFC finding is supported by substantial evidence, the undersigned cannot reweigh the evidence and therefore, upholds the ALJ's decision *See* Biestek, 139 S. Ct. at 1154; Hays, 907 F.2d at 1456 ("[I]t is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").

### 2. The ALJ complied with 20 C.F.R. §416.927 in assigning "little weight" to the opinion of Plaintiff's treating psychiatrist, Diane Guinan, M.D

Plaintiff alleges that the ALJ erred by giving little weight to Plaintiff's treating psychiatrist, Dr. Diane Guinan's opinions.  ECF No. 12-1, at 9. Plaintiff contends that the ALJ was required to give Dr. Guinan's opinions great weight because they are consistent with the medical evidence and there is not significant medical evidence contrary to those opinions. Id.

An ALJ must "weigh and evaluate every medical opinion in the record." Monroe v. Comm'r of Soc. Sec., No. 1:14CV48, 2015 WL 4477712, at *7 (N. D. W. Va. July 22, 2015) (emphasis added); see 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). When evaluating medical opinions, the ALJ must "go through the exercise of carefully balancing the evidence, assigning weights to the competing opinions . . . and explaining the rationale for doing so." Smith v. Barnhart,

395 F. Supp. 2d 298, 307 (E.D.N.C. 2005). That careful balancing necessarily requires that the ALJ explain why the "medical evidence in the record supports the opinions or how the opinions are consistent with the medical evidence." Buchanan v. Colvin, No. 1:14cv209, 2016 WL 485339, at *4 (W.D.N.C. Jan. 19, 2016).

If a treating source's medical opinion on the nature and severity of a claimant's impairments is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with the other substantial evidence in the case record, it is given controlling weight. 20 C.F.R. § 404.1527(c)(2). "While the testimony of a treating physician is often accorded greater weight, this 'treating physician rule . . . does not require that the [treating physician's] testimony be given controlling weight.'" Criss, 2017 WL 2730647, at *3 (emphasis added) (quoting Anderson v. Comm'r of Soc. Sec., 127 F. App'x 96, 97 (4th Cir. 2005)). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, then it should be accorded significantly less weight." Thompson v. Astrue, 442 F. App'x 804, 808 (4th Cir. 2011) (quoting Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

When a treating source opinion is not given controlling weight, the ALJ is to apply the six regulatory factors in determining the weight to give the medical opinion. 20 C.F.R. § 404.1527(c)(2). Those six factors are: (1) the examining relationship, (2) the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Social Security Ruling 96-2p specifically addresses the ALJ's duty of explanation when a treating source opinion is not given controlling weight and the ALJ's decision is a denial of benefits, stating that:

the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The ALJ does not need to specifically list and address each factor in his decision, so long as sufficient reasons are given for the weight assigned to the medical opinion. See Pinson v. McMahon, No. 3:07-1056-PMD-JRM, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009) (holding that the ALJ properly analyzed a treating physician's medical opinion even though he did not specifically address each regulatory factor). "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (citations omitted) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1077 (7th Cir. 1992)).

In this case, the ALJ assigned "little weight" to the opinions of Plaintiff's treating psychiatrist, R. Diane Guinan, and Plaintiff's therapist, Lindsay Smith explaining that:

These opinions are an overestimate of the claimant's limitations and are not supported by any objective evidence, including the consultative examination, mental status evaluations with Dr. Dix and Ms. Smith, and her activities, as explained above. Further, these opinions are not consistent with her therapy notes in 2017 and 2018 that generally showed no apparent distress, a dysthymic or euthymic mood with congruent and normal affect, good eye contact and participation and no indication of any limitation in understanding, remembering, or applying information or concentrating, persisting, or maintaining pace (Exhibits 25F, 38F, and 42F). Also, while Ms. Smith noted in her opinion markedly decreased activities of daily living and poor hygiene, her therapy notes consistently showed appropriate dress, activities that the

claimant was participating in, and no indication of any poor hygiene (Exhibits 25F and 38F).

Plaintiff attacks the ALJ's detailed decision by arguing that the 1) Dr. Guinans opinion is supported by the record; 2) Mental health professional must rely on patients subjective complaints and 3) that Plaintiff's improved condition does not mean the claimant is not disabled. ECF No. 12-1 at 11-14.

Here, the ALJ points to specific records that are inconsistent with Dr. Guinan's opinion. R. 188-194. Additionally, the ALJ points to objective medical evidence in the record that is inconsistent with Dr. Guinan's opinion and Plaintiff's subjective complaints. R. 189, 192, 193. And lastly, the ALJ states that the treatment notes indicate Plaintiff was stable and being treated conservatively which is inconsistent with the Dr. Guinan's opinion. R. 190, 193.

First, the ALJ refers to the following objective medical findings: "The consultative examination showed her concentration was moderately deficient, her persistence was within normal limits, and her pace and social functioning were mildly deficient, and a neuropsychological test while she was undergoing chemotherapy showed only mild to moderate impairment in executive functioning and variable and occasionally impaired processing speed, working memory, and attention and concentration." R. 192. The ALJ further refers to the conflicting mental status evaluation of Dr. Dix, who opined that Plaintiff had "no or only slight limitations in the ability to understand, remember, or apply information; inter with others; concentrate, persist, or maintain pace; and adapt and manage oneself (Exhibit l 7F/3-4)." R. 193. The ALJ gave Dr. Dix opinion little weight as well stating that it underestimated Plantiff's limitations. Plaintiff claims that  Dr. Guinan's opinion is consistent with the opinion of Plaintiff's therapist Lindsay Smith,

16

LCSW, who assessed marked limitations in activities of daily living with poor hygiene. ECF No. 12-1 at 12, citing R. 2270-71. However, as the ALJ discussed, Plaintiff's therapy notes consistently showed appropriate dress, various activities Plaintiff reported performing, and no indication of poor hygiene. R. 194. Additionally, the ALJ notes that there are no mental health treatment records after September 2018. R. 192. Dr. Guinan's opinion is dated March of 2019. R. 2278

Lastly, the ALJ discusses the inconsistency in the Plaintiff's activities with Plaintiffs subjective complaints and Dr. Guinan's opinion. "Further, the claimant's reported activities during this period are not consistent with this opinion, as the claimant was able to care for her children with special needs, drive a car, attend to her own personal care, shop in stores, and interact on Facebook." R. 193. "[W]hile she reported some panic attacks and difficulty concentrating, mental status evaluations throughout the relevant period failed to show any significant social, behavioral, or cognitive deficits and she reported an ability to interact with others in many situations, such as at an Easter party at her children's school, dealing with housing issues with her property manager, shopping in stores, and attending her sons' appointments." R. 192.

Plaintiff further argues that the ALJ erred in observing that Dr. Guinan's opinion was based largely on Plaintiff's subjective complaints instead of objective findings. ECF No. 12-1 at 13. An ALJ may discount a medical opinion that is primarily a "recitation of the claimant's subjective complaints." See, e.g., Barbare v. Saul, No. 19-1503, 2020 WL 3303378 (4th Cir. 2020). The regulations make clear that a claimant's subjective reports to a provider do not transform them into objective evidence. See 20 C.F.R. § 416.929(a); Craig, 76 F.3d at 590 n.2 (holding that a medical source does not transform the claimant's

subjective complaints into objective findings simply by recording them in his narrative report). 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion"). Here, the ALJ identified overwhelming evidence contrary to this opinion and Plaintiff has not shown that the opinion was deserving of more weight under the regulations.

Lastly, Plaintiff argues that that Plaintiff's improved condition does not mean the claimant is not disabled. ECF No. 12-1 at 14. This argument is misplaced as the ALJ did not make this finding. The ALJ instead stated that,

> Additionally, both failed to cite to any objective findings to support such significant limitations, and instead cite to the claimant's reported subjective symptoms, **which the medical evidence of record does not support have caused the degree of limitation they opined on any persistent and consistent basis based on mental status evaluations, treatment notes that reported improvement in symptoms and 'stable' impairments, and her activities that support some ability to interact appropriately, understand and apply information, adapt to social situations, and concentrate, persist, and maintain pace**.

(emphasis added) R. 194.

The ALJ also noted in his decision, "While the claimant has mental impairments and reported several stressors during the relevant period, she received proper treatment, her symptoms improved with medications, and she was not hospitalized." R. 192. "Additionally, even if the claimant had periods of limited concentration, persistence, and pace during her chemotherapy and radiation treatments, the medical evidence of record does not support any period of 12 months at such extreme deficits." R. 193. A treating physician's own progress notes, which indicate conditions were relatively stable and controlled with treatment, were used to show inconsistency in

the treating physicians opinion. Dellinger v. Colvin, 2015 U.S. Dist. LEXIS 112786; 2015 WL 5037942.

Plaintiff may point to some evidence in the record that supports Dr. Guinan's opinions regarding Plaintiff's limitation. However, the court cannot disturb the ALJ's evaluation merely because other evidence exists that weighs against that evaluation. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]."). To the contrary, this court may not disturb the ALJ's weighing of the medical opinion evidence of record absent some indication the ALJ dredged up "specious inconsistencies" or failed to give good reason for the weight assigned. Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015). Here, the ALJ considered all the evidence and ultimately decided to afford "little weight" to Dr. Guinan's opinions for the reasons articulated above. As such, the ALJ's evaluation of Dr. Guinan's opinions is based upon substantial evidence and without legal error. The court's limited review ends there. The ALJ's extensive discussion of the evidence was far greater than a "cursory and conclusory analysis" and amply provided for meaningful judicial review under Fox v. Colvin, 632 F. App'x 750 (4th Cir. 2015) and Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016).

In conclusion, the ALJ discussed evidence throughout the relevant period that was inconsistent with the opinions of Dr. Guinan regarding Plaintiff's limitations. As noted above, the ALJ is not required to explicitly list and assess each regulatory factor, see Pinson, 2009 WL 763553, at *10, as long as he gives sufficient reason to support the weight he has assigned to a particular medical opinion. See Dunn, 607 F. App'x at 267.

19

Here, the undersigned concludes that the ALJ has complied with applicable law and provided substantial evidence to support his assignment of little weight to the opinion of Dr. Guinan and his RFC determination is supported by substantial evidence.

### 3. The ALJ complied with two-step analysis required in evaluating Plaintiff's subjective symptoms and his findings were supported by substantial evidence.

In March 2016, the Social Security Administration superseded the language of SSR 96-7p, 1996 SSR LEXIS 4 when it ruled in SSR 16-3p, 2016 SSR LEXIS 4 that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2016 SSR LEXIS 4 (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1, 2016 SSR LEXIS 4, at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, 2016 SSR LEXIS 4, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. In evaluating Plaintiff's subjective symptoms, an ALJ must follow a two-step analysis. 20 C.F.R. §416.929(a);SSR16-3p, 2016 SSR Lexis 4, 2016 WL 1119029. However, the methodology required by both SSR 16-3p, 2016 SSR LEXIS 4 and SSR 96-7p, 1996 SSR LEXIS 4, are quite similar. Under either, the ALJ is required to consider Plaintiff's report of her own symptoms against the backdrop of the entire case record. In SSR 16-3p, 2016 SSR LEXIS 4, this resulted in a "credibility" analysis. In SSR 16-3p, 2016 SSR LEXIS 4, this allows the adjudicator to evaluate "consistency."

First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029. Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. Id.

Here, the ALJ determined as follows: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms **are not entirely consistent** with the medical evidence and other evidence in the record **for the reasons explained in this decision**." (emphasis added) R. 189. Plaintiff complains that because the ALJ used the words "are not entirely consistent" he was violating SSR 16-3p because there is no requirement that the Plaintiff's symptoms be "completely" consistent with the record. However, no where in the ALJ decision does the ALJ state that Plaintiffs symptoms must be "completely" consistent. Rather, the ALJ evaluated the entire record, and properly noted numerous inconsistencies between Plaintiff's complaints and the objective medical examination findings, the lack of findings that would be expected given her description of her limitations, her treatment for her conditions, and the opinion evidence.  Both the regulations and SSR 16-3p explain that these are appropriate considerations in evaluating the persuasiveness of a claimant's subjective complaints. See 20 C.F.R. § 416.929(c); SSR 16-3p, 2016 WL 1119029, at *4 ("In considering the intensity, persistence, and limiting effects of an individual's

symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."). Furthermore, SSR 16-3p provides that an ALJ should provide "specific reasons for the weight given to the individual's symptoms" but does not require an exhaustive discussion of every symptom or factor in the regulation, as Plaintiff suggests. 2016 WL 1119029; see also Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in the decision.") (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)).  The Court can easily determine how the ALJ evaluated Plaintiff's subjective complaints; Plaintiff has failed to show how the evaluation was "patently wrong."

The ALJ methodically starts his analysis with the inconsistencies in her activities of daily living then proceeds to the detailed inconsistencies in the medical evidence. For example, the ALJ states that, "Further, she reported to her psychiatrist that she was "busy with getting them (her sons) to school and their appointments (Exhibit 25F/13); taking her sons to school and church, running errands, and going to stores (Exhibit 25F/104 and 116); attending her son's appointment (Exhibit 38F/3); and helping with her children's Easter party at school (Exhibit 38F/16)." R. 189. The ALJ further stated that these activities "appear to support a degree of functioning that is inconsistent with her allegations."  Id.

Next, Plaintiff disagrees with the ALJ's determination that Plaintiff's "allegations of continuing, severe fatigue are not supported to the degree alleged in treatment notes." R.

190.  Plaintiff argues that "severe fatigue cannot be disregarded simply because it is not supported by objective medical evidence. ECF No. 12-1 at 17.  However, the ALJ further remarked in his decision that Plaintiff also "reported an ability to attend to her own personal care, drive a car, shop in stores, and care for her children with limited support and help from her husband during the relevant period, which appears inconsistent with debilitating symptoms including fatigue (Exhibits 25F/58 and 38F)." Id. Once again, Plaintiff does not point to evidence documenting any functional limitations resulting from fatigue beyond those already accounted for in the RFC. See Nasrallah, 140 S. Ct. at 1692. Significantly, the ALJ did not find that Plaintiff had no limitations. Rather, the ALJ reasonably concluded, after evaluating the record as a whole, that Plaintiff did not have work-preclusive limitations, as she claimed.

Lastly, Plaintiff argues that the ALJ considered the type of activities the Plaintiff could perform but not the extent she was able to perform them.  However, it is clear that the ALJ did consider that her husband provided her limited support in these activities as noted above.  An ALJ may consider Plaintiff's daily activities as one consideration among many in evaluation of her subjective complaints. See 20 C.F.R. § 416.929(c)(3)(i); see also Ladda v. Berryhill, 749 F. App'x 166, 173 n.4 (4th Cir. 2018). Indeed, this Court has found that an ALJ may appropriately note a claimant's caring for young children as a factor in analyzing whether the claimant may be less limited than alleged. Walker v. Berryhill, 2018 U.S. Dist. LEXIS 101454. Plaintiff does not point to evidence which the ALJ overlooked, but instead asks the Court to reevaluate Plaintiff's symptom evaluation and reassess Plaintiff's RFC, which is not the Court's role in reviewing the Commissioner's decision.

The ALJ's decision demonstrates that the ALJ properly evaluated Plaintiff's allegations, medical treatment, and evaluations. The ALJ articulated support for the determination that is rooted in the record and consistent with the applicable rules and regulations. Therefore, for all of the reasons stated above, the undersigned FINDS that the ALJ's symptom evaluation finding complies with applicable law and is supported by substantial evidence.

## VII.    RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for SSI contains no legal error and is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 12] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 16] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 18th day of February, 2021.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE